## COLLINS v. O'NEIL, SHERIFF.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

## SAME v. THE SHERIFF OF THE CITY AND COUNTY OF SAN FRANCISCO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

Nos. 241, 320.   Argued April 5, 1909.—Decided May 17, 1909.

Where a provision in a treaty or convention is plain it must receive a reasonable and sensible construction, and not one which it is impossible to conceive that the representatives of civilized countries would enter into.

The rule that a person extradited under treaty provisions cannot be tried for an offense other than that for which he was extradited until after he has had opportunity to leave the country to which he was surrendered does not apply to an offense committed after he arrives in the latter country. *United States* v. *Rauscher*, 119 U. S. 407.

Whether a person extradited and who thereafter commits a crime in the country to which he is surrendered shall be first tried for the earlier or later crime is a matter wholly within the jurisdiction of the country to which he is surrendered and is of no interest to the surrendering country.

A fugitive from justice has no inherent right of asylum; his rights in that respect depend wholly upon the treaty between the countries demanding and surrendering him.

Under the treaty of 1842 and convention of 1889 with Great Britain a surrendered person can be tried for an offense committed in this country after his arrival; and the trial for such offense does not have to await the conclusion of the trial of the offense for which he was surrendered; and so *held* that one who, on the trial of the offense for which he was surrendered and which resulted in a disagreement, committed perjury could be indicted and tried for that offense without being allowed an opportunity to leave this country and without waiting for the final conclusion of the trial for the crime for which he was surrendered.

151 California, 340, and 154 Fed. Rep. 980, affirmed.

In No. 241, the plaintiff in error, being imprisoned in the county jail of San Francisco, in the State of California, by the sheriff, applied to the Supreme Court of that State in banc for a writ of *habeas corpus* to obtain his discharge from imprisonment. The writ was granted, and after hearing was dismissed, and the petitioner remanded to the custody of the sheriff. 151 California, 340. A writ of error was then sued out from this court and the case brought here.

In No. 320 the appellant applied to the Circuit Court of the United States for the Northern District of California for a similar writ, which was issued, and a hearing had and the writ dismissed by the court. 149 Fed. Rep. 573; and see 151 Fed. Rep. 358; 154 Fed. Rep. 980. From the order of dismissal an appeal was allowed to this court. The two cases have been heard here as one.

The material facts are these: On July 13, 1905, an indictment was found by the grand jury of San Francisco county, California, against the plaintiff in error, charging him with the crime of perjury, alleged to have been committed in San Francisco on June 30 of that year. The plaintiff in error not being found within the State, it was subsequently discovered was in Victoria, British Columbia, and proper demand, under the treaty between the United States and Great Britain, being made for his surrender upon that indictment for trial, he was, on October 7, 1905, duly surrendered, and removed from Victoria by one Gibson, the agent designated in the Canadian extradition warrant, to San Francisco, where he was placed in the custody of the then sheriff, who also had a bench warrant issued from the Superior Court on the perjury indictment against the plaintiff in error.

His trial upon the indictment upon which he had been extradited began in San Francisco in December, 1905, and resulted in the disagreement of the jury on the twenty-third of December of that year, and the case was then continued, to be thereafter reset for trial. Upon the trial of the indictment for which plaintiff in error was extradited he was himself sworn, and testified as a witness, and on the twenty-ninth of December, 1905, after he had given such evidence, he was indicted again by the grand jury of San Francisco county, the indictment charging him with perjury committed on December 12, 1905, while testifying on his own behalf on the trial, as already stated. He was arraigned on this indictment in January, 1906; and after he had made all objections to his being arraigned or placed on trial on this second indictment until the conclusion of the first, and until he had then been afforded opportunity to return to Victoria, he was, nevertheless, brought to the bar and the trial proceeded with, resulting in a verdict of guilty on February 27, 1906, upon which judgment was entered that he be imprisoned in the state prison for the term of fourteen years.

From that judgment he appealed to the District Court of

Appeals of California, where it was affirmed, and thereafter he applied to the state Supreme Court for a rehearing by that court, which was denied. *People* v. *Collins*, 6 California App. 492; *S. C.*, 92 Pac. Rep. 513.

Thereupon the plaintiff in error, being restrained of his liberty, as well under the judgment of conviction, as otherwise under the extradition warrant, applied to the state Supreme Court for a writ of *habeas corpus*, as above stated, contending that his conviction and sentence were void and in excess of the jurisdiction of the state court, as being in contravention of his extradition rights under the treaty between the United States and Great Britain, and § 5275 of the United States Revised Statutes, set forth in the margin.[1]

The writ was issued and a return made, denying many of the allegations of the petition, and, after hearing, it was finally dismissed, and the plaintiff in error remanded to the custody of the sheriff. 154 Fed. Rep. 980.

*Mr. George D. Collins*, plaintiff in error and appellant, *pro se*, submitted:

The accused has the legal right, by virtue of the treaty, to a trial to a final conclusion of the extradition case. This right is supreme, paramount and exclusive. It imposes an obligation which the State must first obey and perform, and to which all its laws and process and judicial power are necessarily in-

---

[1] Section 5275, Rev. Stat.; 3 U. S. Compiled Statutes, page 3596. "Whenever any person is delivered by any foreign government to an agent of the United States, for the purpose of being brought within the United States and tried for any crime of which he is duly accused, the President shall have power to take all necessary measures for the transportation and safekeeping of such accused person, and for his security against lawless violence, until the final conclusion of his trial for the crimes or offenses specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such crimes or offenses, and for a reasonable time thereafter, and may employ such portion of the land or naval forces of the United States, or of the militia thereof, as may be necessary for the safekeeping and protection of the accused."

ferior and subordinate. It is incompatible with this right and obligation, and in violation of the treaty, to arrest the accused, put him to trial and prosecute him on a charge of committing another offense subsequently to the extradition surrender, and do this while the extradition case is pending and awaiting trial to a final conclusion. Nothing in article 3 of the convention of 1889, authorizes any such nullification of the supremacy of the extradition process and of the supremacy of the extradition jurisdiction in its exclusive authority and control over the person of the accused.

The extradition jurisdiction over the person of the accused, is special and limited, and extends no farther than the charge on which he has been extradited. It is a jurisdiction derived entirely from the treaty; and consequently is supreme and exclusive until it has wrought its function by securing to the accused a trial to a final conclusion of the specific charge on which his extradition was granted, and he has been afforded reasonable time and opportunity after his final release on that charge, to return to the country of asylum.

To conserve and enforce the fundamental and paramount right to a trial to a final conclusion of the extradition case, the law of the treaty prohibits the arrest or trial of the accused upon any other charge, until he is first given a reasonable time and opportunity after his final release from custody or imprisonment in the case where his extradition was granted, to return to the country of asylum. This principle also maintains in exclusive and supreme control of the person of the accused, the extradition jurisdiction, until the extradition case is ended. The well-settled law on this point deems the accused to be present and actually resident within the territory of the nation granting the asylum; thus necessitating a new extradition to authorize the subsequent trial and prosecution on the subsequent extraditable offense. There is absolutely nothing in article 3 of the convention of 1889, that can by any possibility be construed to the contrary. It simply fails to prohibit, and it would be very ridiculous if it did prohibit, the prosecu-

tion for the subsequent offense. It certainly does not authorize a prosecution for a subsequent extraditable offense, without the necessity of a new extradition. It does not and could not deal with the subject of subsequent offenses; it is entirely foreign in its scope and purpose to all such matters. Above all else it does not permit a trial and prosecution for the subsequent offense, while the extradition case is pending, and while the extradition jurisdiction extends its supreme and exclusive authority over the person of the accused; the treaty would clearly be self-stultifying and self-contradictory if it did.

By § 5275, Rev. Stat., the extradited prisoner is invested with the legal right to a trial to a final conclusion of the charge specified in the warrant of extradition. The statute no more than the treaty, nor than the well-settled principle of international law, makes any distinction whatever, between such prosecutions for subsequent offenses and such prosecutions for prior offenses; nor is it possible for any such distinction to find support in reason or authority. It can make no difference at all and is entirely irrelevant to the point, that there exists an absolute immunity as to prosecutions for prior offenses, and none as to prosecutions for subsequent offenses.

By the treaty, the statute, and the principle of international law, the extradited person is entitled as a matter of right to have his trial to a final conclusion, in the extradition case, within a reasonable time. What is a reasonable time will usually be determined by analogy to the *lex fori*. In California the period is sixty days and is held by the Supreme Court of the State to apply as much to a case where there has been a mistrial as it does to a case where no trial has taken place at all. *Ex parte Begerow*, 133 California, 349.

Holding the accused in custody for years on the extradition charge, against his constant protest, without a trial to a final conclusion of the charge on which he was extradited, is extremely and oppressively unreasonable; and, in law, operates to terminate the jurisdiction over his person, and he is entitled to his discharge on *habeas corpus*. *Ex parte Begerow*, 133

California, 349; Hughes, Crim. Law. and Proc., § 2567; Hawley on Int. Extr., p. 12.

The extradition warrant gives the sheriff of San Francisco no authority to imprison the appellant and plaintiff in error; nor has the sheriff been vested with any such power by the United States. So that, even if the warrant were now in full force and effect, the sheriff is not authorized by it to hold the custody of the accused.

See, in support of the foregoing propositions: *Ex parte Rauscher,* 119 U. S. 407; *Johnson* v. *Browne,* 205 U. S. 309; Pomeroy on International Law, § 199; 2 Wharton's Digest of International Law, § 270; *United States* v. *Watts,* 8 Sawyer, 370; *Adriance* v. *Lagrave,* 59 N. Y. 114.

*Mr. William Hoff Cook,* for defendants in error and appellees:

After a fugitive criminal is surrendered by the agent designated in the extradition warrant to the sheriff, who is the person designated by law as the proper party to receive him, where a state law has been violated *instanter,* the provisions of such warrant have been complied with, and the warrant itself becomes *functus officio.* *United States* v. *Watts,* 8 Sawyer, 383; *State* v. *Vanderpool,* 39 Ohio St. 273; *Ex parte Collins,* 151 California, 340, and cases there cited.

The manifest scope and object of the treaty was to deal with the present and past offenses, and the future was only considered in relation to the return of such fugitive to the surrendering country, after an acquittal, and in connection with his status as a criminal at the time of extradition. It was never for a moment considered, by the treaty making powers, that a fugitive criminal was to be clothed with all the immunity from arrest or punishment with which a minister, ambassador or consul is vested while domiciled as a representative of his government.

It was never contemplated by the treaty makers, nor will any court declare that there shall be ingrafted on to the treaty, by implication, an absolute *carte blanche* to an extradited

fugitive criminal to commit, with impunity, any number of extraditable or non-extraditable crimes, while awaiting trial for the extradition crime.

If Collins had no right to demand an asylum in Canada for offenses which he had already committed, *a fortiori*, he had no prospective right to demand such asylum or security in relation to any other crime which he subsequently might, or intended, to commit in California. As to the subsequent offense which he did commit, he never became a fugitive to Canada. He committed the offense in the California jurisdiction and never departed therefrom. Nor does the treaty direct that such jurisdiction by California over his person should be temporarily surrendered, and he be allowed to depart, and seek a new asylum and domicil, either in Canada, Honduras, or any other foreign country. *United States* v. *Rauscher*, 119 U. S. at page 411; *Ker* v. *Illinois*, 119 U. S. 436.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The objections which the plaintiff in error urges to his further imprisonment are founded upon what he insists is implied from the provisions of the treaties between the United States and Great Britain (1842–1889), and he contends that under those treaties the State of California had no right or jurisdiction to try him for any offense whatever other than the one for which he was extradited and delivered to the Government of the United States for trial, even though he committed an offense subsequently to the extradition, and he further asserts that after a trial has been had for the offense for which he was extradited, he is entitled to be afforded reasonable time and opportunity after his final release on that charge to return to the country of asylum, and that the trial of the crime for which he was extradited must be had within a reasonable time after his extradition, or he is for that reason entitled to his discharge. In other words, the plaintiff in error claims immunity, under the treaties, from arrest or detention for any crime com-

mitted by him after he has been brought back upon the extradition warrant until he has been allowed a reasonable time to return to the place from which he was taken. He contends that the duty originally resting upon the demanding country to try him only for the offense for which he was extradited and to then afford him reasonable opportunity to return, is unaffected by the fact that he committed another crime after his extradition.

The treaty of 1842, August 9 (8 Stat. 576, § 10), is the one in regard to which discussions as to its meaning have arisen. *United States* v. *Rauscher*, 119 U. S. 407. Subsequently to the treaty, Great Britain passed the extradition act of 1870 (32 and 33 Victoria, chapter 52); and also in 1873 an act to amend the extradition act of 1870 (36 and 37 Victoria, chapter 60). Both these acts are cited as the extradition acts of 1870 and 1873. See 1 Moore on Extradition (1891), pages 741, 755. In subdivision 2 of § 3 of the act of 1870 it is provided: "(2) A fugitive criminal shall not be surrendered to a foreign State unless provision is made by the law of that State, or by arrangement that the fugitive criminal shall not, until he has been restored or had an opportunity of returning to Her Majesty's dominions, be detained or tried in that foreign State for any offense committed prior to his surrender, other than the extradition crime proved by the facts on which the surrender is grounded."

Article 3 of the treaty or convention of 1889, July 12, between Great Britain and the United States is to be found in 26 Stat. 1508–9, and is also, among others, set out in *Johnson* v. *Browne*, 205 U. S. 309, 319, as follows: "Article III. No person surrendered by or to either of the high contracting parties shall be triable or be tried for any crime or offense, committed prior to his extradition, other than the offense for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was surrendered." The treatment of the criminal for all acts committed or said to have been committed by him prior to extradition is thus fully provided for.

The contention of the plaintiff in error that the duty to afford opportunity to return after a trial or other termination of the case upon which he was extradited is unaffected by any subsequent crime he may have committed, is not even plausible. Nothing in the *Rauscher case* (*supra*) is authority for any such contention. The duty to afford opportunity to return after trial, as stated, is limited to matters which happened before extradition, and in the nature of things such duty cannot be extended by implication so as to cover a totally different state of facts. Because, in some cases, in construing the treaty, it has been stated that a person extradited can be tried only for the offense for which he was surrendered for trial until he has had an opportunity of returning, it is assumed by the plaintiff in error that such language prohibits the trial of a person so extradited for any crime committed by him subsequently as well as prior to the surrender, without an opportunity for his return to the other country. The whole question is simply one as to the meaning of the treaty, and we cannot doubt for a single moment what that meaning is.

Much is said by the plaintiff in error as to his right to an asylum as if it inhered in himself. The right is, however, simply provided for by treaty, and must be found therein, so far alone as the criminal is concerned.

The question then is, does either the treaty or convention, by express provision or by inference, provide for a return of the criminal to the surrendering country after his surrender and after a subsequent commission of a crime in the country to which he was surrendered? To ask the question is to answer it. The plaintiff in error contends for the treaty right to leave the country, notwithstanding his commission of the subsequent crime. This we cannot assent to. It is impossible to conceive of representatives of two civilized countries solemnly entering into a treaty of extradition, and therein providing that a criminal surrendered according to demand, for a crime that he has committed, if subsequently to his surrender he is guilty of murder or treason or other crime is, nevertheless, to

have the right guaranteed to him to return unmolested to the country which surrendered him. We can imagine no country, by treaty, as desirous of exacting such a condition of surrender or any country as willing to accept it. When a treaty or statute contains a provision that the party surrendered shall be tried for no other offense until he has had an opportunity to leave the country, the meaning of such a provision is perfectly plain, and must receive a reasonable and sensible construction. The party proceeded against must not be tried for any other offense existing at the time when he was extradited (whether at the time of such extradition it had or had not been discovered), until he shall have had a reasonable time to return to the country from which he was taken, after his trial or other termination of the proceeding. That such privilege should be accorded to one who commits a crime after his surrender to a demanding government lacks all semblance of reason or sense.

Spear in the second edition of his work on the Law of Extradition says, at page 84, that the party extradited is not "protected against trial for any offenses which he may commit against the receiving government subsequently to his extradition, and while in its custody, or after his discharge therefrom . . . ." Such a criminal has no asylum, because he never had an asylum within the jurisdiction of the government delivering him, with regard to the crime which he committed since such delivery.

The contention is also without merit that he has, at any rate, the right to a trial to a conclusion of the case for which he was extradited, before he can be tried for a crime subsequently committed. The matter lies within the jurisdiction of the State whose laws he has violated since his extradition, and we cannot see that it is a matter of any interest to the surrendering government.

There is nothing in section 5275, Rev. Stat., *supra*, which gives the least countenance to the claims of the plaintiff in error.

The other objections made by him in regard to the person who now has him in custody under the various warrants and processes, copies of which are returned in the record, we regard as unimportant.

As soon as the judgments herein are affirmed the plaintiff in error will, of course, pursuant to the judgment entered upon the verdict of conviction against him, be taken to the state prison in California, provided for in the sentence, and there confined according to law. The orders and judgments in the two cases are

*Affirmed.*