**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Fred WILBURN, etc., Defendant,**

**Antonio Salinas, etc., et al., etc., Defendants-Appellants.**

**No. 73-3554.**

United States Court of Appeals, Fifth Circuit.

July 29, 1974.

Oscar Spitz, J. A. Tony Canales, Corpus Christi, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., Jack Shepherd, Acting U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., Morton Hollander, Houston, Tex., Bruno A. Ristau, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before DYER and MORGAN, Circuit Judges, and KRAFT, District Judge.

KRAFT, District Judge.

Appellants, Antonio Salinas (Salinas), Clerk of the District Court of Duval County, Texas, and Israel Saenz (Saenz), Sheriff of the same county, appeal from a preliminary injunction ordered by the United States District Court for the Southern District of Texas, which, in very broad terms, prohibited them from "issuing any process of any nature . . . for any consular personnel or any subpoenas . . . for the production of documents which are any part of the consulate records of the Consul of the Republic of Mexico in Corpus Christi, to Ernestina Fernandez Picazo or any other member of the consulate staff . . . ."

The genesis of the ultimate injunction was the issuance by Salinas, on August

13, 1973, of a subpoena, which directed that the executing officer summon Mrs. Ernestina Fernandes, Mexican Counsel (sic) to appear before the District Court of Duval County at 10 A.M., August 15, 1973 to testify in a cause there pending, to wit: Archer Parr v. Jody Martin Parr and to bring with her and produce an application of Jody Martin Parr, dated May 2, 1973. It is conceded that the application sought was one for an ordinary tourist's card to visit Mexico and similar to applications obtainable for like use at Mexican airline ticket offices in the United States.

The subpoena was transmitted on August 14, 1973 to a Constable Wilburn, who gave it to Deputy Constable Gonzalez for service. Sheriff Saenz does not appear to have been involved in any way. The deputy constable made two efforts on that day to serve the subpoena at the residence of Mrs. Ernestina Fernandez,[1] who is conceded to have then been Vice Consul. Both attempts at service failed, because the Vice-Consul indicated she was ill in bed and could not come to the door. The deputy constable abandoned his efforts to serve the subpoena and on the same day made his return on the subpoena "not executed". It was so filed by Salinas' office on August 15, 1973 at 9:20 A.M.

On the same day, August 15, the complaint in this action, together with an *ex parte* application for a temporary restraining order, was filed in the court below,[2] which forthwith entered a temporary restraining order and set August 21st for a hearing on an application for preliminary injunction. Following a hearing on August 21st, the preliminary injunction appealed from was entered.

The appellee's complaint, expressly bottomed on Articles 28 through 35 of the Vienna Convention on Consular Relations,[3] asserts a complete immunity from State process for consular officials, records and premises from seizure, subpoena or arrest. Appellants, correctly pointing out that only a State subpoena is involved here, urge that, in these circumstances, whatever immunity may exist is specifically qualified under Article 44.

Examination of Articles 28, 29, 30, 32, 34 and 35 discloses no relevance to the present controversy.

Article 31 provides that authorities of the host State shall not enter that part of the consular premises which is used exclusively for the work of the consular post, except with the consent of designated persons. No such entry was made, attempted or threatened by appellants.

Article 33 provides that the consular archives and documents shall be inviolable at all times wherever located. "Consular archives" is defined by Article 1(k) to include all the papers, documents, correspondence, books, films, tapes and registers of the consular post together with the ciphers and codes, the card-indexes and any article of furniture intended for their protection or safekeeping. Whether the application for a tourist's card filed by Mrs. Parr is, *per se*, a "consular archive or document" is not immediately clear, particularly in

---

1. We can only conjecture from the record before us why the subpoena, the complaint in this action, the temporary restraining order and the reply to the application for preliminary injunction designate the Vice-Consul as Ernestina (or Ernestine) Fernandez, while the injunctive order appealed from names her as Ernestina Fernandez Picazo.

2. The record before us does not disclose at whose instance the present action was filed

with such celerity. We cannot fairly infer that it could only have been the Vice-Consul, since we were informed at bar that the Vice-Consul and Mrs. Parr, the defendant in the Duval County divorce action, were represented by the same attorney.

3. 21 U.S. Treaties 77. This was ratified by the Republic of Mexico and the United States prior to the institution of the instant action.

light of the provisions of Article 44, entitled "Liability to give evidence":

"1. Members of a consular post[4] may be called upon to attend as witnesses in the course of judicial or administrative proceedings. A consular employee or a member of the service staff shall not, except in the cases mentioned in paragraph 3 of this Article, decline to give evidence. If a consular officer should decline to do so, no coercive measure or penalty may be applied to him.

2. The authority requiring the evidence of a consular officer shall avoid interference with the performance of his functions. It may, when possible, take such evidence at his residence or at the consular post or accept a statement from him in writing.

"3. Members of a consular post are under no obligation to give evidence concerning matters connected with the exercise of their functions[5] or to produce official correspondence and documents relating thereto . . . ."

The court below failed to give consideration to Article 44 and thereby fell into error. The carefully drawn distinctions, evident upon analysis of Articles 1 and 44, must be given due effect. The Vice-Consul was, as a "consular officer," a "member of the consular post" and, so, under Article 44 § 1 was eligible to be called upon to attend as a witness in the State judicial proceeding, as were "consular employees" and "members of the service staff". The issuance and attempted service of the subpoena did not contravene the treaty.

If subpoenaed, the Vice-Consul as a "consular officer" would have had the right to elect whether to testify or to decline to do so, and in the latter event was subject to no sanction. On the other hand "consular employees" and "members of the service staff" had no such option, except in the cases mentioned in § 3 of Article 44. The order of the court below, which prohibited the issuance and service of any subpoena, relieved the Vice-Consul of all possibility of being called upon to make an election and precluded the State court from ascertaining the election made by the Vice-Consul. The court below could not justifiably assume that the State court would ignore or misapply the treaty provisions.

As a "consular officer" and, so a "member of the consular post", the Vice-Consul, under Article 44 § 3 was under no obligation to give evidence concerning matters connected with her consular functions or to produce any official correspondence or documents relating thereto—nor was she prohibited from so doing. Again, it was the province of the Vice-Consul, not the court below, to determine whether the application of Mrs. Parr sought by the subpoena, was a document relating to the exercise of consular functions. If the Vice-Consul decided it was such a document, she would be under no obligation to produce it nor would she be prohibited from doing so. The option was the Vice-Consul's, not that of the Texas court or the court below.

We conclude that the issuance and attempted service of the subpoena were lawful and that, absent any evidence of interference, or threat of interference, by the Texas court with the Vice-Consul's rights to elect to testify or not and to produce or not to produce the application, the issuance of the preliminary injunction was error.

Reversed and remanded with directions to vacate the preliminary injunctive order.

---

4. Article 1(g) defines members of the consular post to mean, inter alia, "consular officers, consular employees and members of the service staff"; and (d) of the same Article defines consular officer as any person, including the head of a consular post, entrusted in that capacity with the exercise of consular functions; (e) defines "consular employee" as any person employed in the administrative or technical service of a consular post.

5. Among the consular functions delineated in Article 5(d) is the issuance of visas or appropriate documents to persons wishing to travel to the sending State, here Mexico.