819 F.2d 1511
 Jack GERRITSEN, Plaintiff-Appellant,
v.
Miguel DE LA MADRID HURTADO, Javier Escobary Cordova,
Agustin G. Santaolalla, Consulado General De
Mexico, Enrique S. Guzman, Salvador
Uribe, Defendants- Appellees.
 No. 86-5726.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1987.
Decided June 18, 1987.
 
 Jack Gerritsen, Monterey Park, Cal., for plaintiff-appellant.
 Eduardo De-Ibarolla Nicolin and Alfonso de Rosenzweig-Diaz, Los Angeles, Cal., for appellees.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON and NORRIS, Circuit Judges, and REED,* District Judge.
 PREGERSON, Circuit Judge:
 
 
 1
 Jack Gerritsen, alleging various torts and civil rights violations, filed a complaint pro se against the President of Mexico, the Mexican Consulate, and several consular officials and employees associated with the Mexican Consulate in Los Angeles. The Mexican government filed a motion to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. The district court dismissed the complaint against all of the defendants for lack of subject matter jurisdiction. Gerritsen appeals the district court's order dismissing the complaint. We reverse.
 
 
 2
 We hold that the district court has subject matter jurisdiction over the claims against the two consuls general, the vice consul, and the Mexican Consulate. We further hold that Gerritsen must be allowed to amend his complaint, if he wishes, to gain jurisdiction over the other defendants as well.
 
 BACKGROUND
 
 3
 Gerritsen filed a complaint pro se in which he alleged various wrongful acts by the Mexican government and its employees. There has been no proof at this stage of the proceedings that the acts alleged in Gerritsen's complaint occurred. In reviewing a dismissal for lack of subject matter jurisdiction, we are required to assume that the allegations in the complaint are true. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (dismissal for lack of subject matter jurisdiction and failure to state a claim); Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir.1985) (dismissal for failure to state a claim), cert. denied, --- U.S. ----, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986).
 
 
 4
 The complaint alleges that on several occasions, when Gerritsen was distributing leaflets critical of the Mexican government in front of the Mexican Consulate in Los Angeles, consulate staff acted in various unlawful ways to stop him from distributing the leaflets. The staff's alleged acts included striking Gerritsen with a heavy metal object, threatening him with a club and with a gun, kidnapping and interrogating him, and forcibly taking his leaflets and camera. Gerritsen also alleges that the consulate staff on one occasion asked the Los Angeles Police to arrest him.
 
 
 5
 The complaint alleges jurisdiction under 28 U.S.C. Sec. 1343.[1] It names as defendants the president of Mexico, the Mexican Consulate, two consuls general of Mexico, a vice consul of Mexico, an administrative assistant at the Mexican Consulate in Los Angeles, and unidentified employees of the Mexican government. The Mexican government is not itself a party. However, the motion to dismiss below and the appellate brief filed on behalf of these defendants were filed by the Mexican government pro se.
 
 
 6
 In its sua sponte order dismissing the complaint, the district court held that the Mexican government could not represent the defendants pro se, that there is no personal jurisdiction over the president of Mexico, and that there is no subject matter jurisdiction under 28 U.S.C. Sec. 1343 because of the absence of state action.[2] Gerritsen appeals only the third holding.[3]
 
 DISCUSSION
 I. Appealability
 
 7
 The district court's sua sponte order dismissing the complaint concludes with the following language: "Accordingly, for the reasons stated above, President de la Madrid is dismissed from this action with prejudice; plaintiff's complaint is dismissed for lack of subject matter jurisdiction."
 
 
 8
 Ordinarily an order dismissing the complaint rather than dismissing the action is not a final order and thus not appealable. However, "[i]f it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable." Hoohuli v. Ariyoshi, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984).
 
 
 9
 The order did not grant Gerritsen leave to amend the complaint. Failure to allow leave to amend supports an inference that the district court intended to make the order final. See Scott v. Eversole Mortuary, 522 F.2d 1110, 1112 (9th Cir.1975). Furthermore, the court's intention of finality is evinced by its apparent conclusion that amendment of the complaint could not save the action. See Scanlon v. Atascadero State Hosp., 677 F.2d 1271, 1272 (9th Cir.1982), vacated on other grounds, 465 U.S. 1095, 104 S.Ct. 1583, 80 L.Ed.2d 117 (1984). The district court dismissed the complaint because of the absence of state action (i.e., conduct under color of state law required by 28 U.S.C. Sec. 1343(a)(3)). In doing so, the district court noted that "[t]he alleged unconstitutional actions taken against plaintiff were all taken by members of the Mexican consulate or officials of the Mexican government," and that acts by the Mexican government, including the Mexican Consulate, cannot constitute conduct under color of state law. The complaint, therefore, could not be amended to allege that the defendants' conduct was under color of state law as required by section 1343(a)(3).
 
 
 10
 Because the complaint could not properly have been amended to allege state action, it is clear that the district court intended its order dismissing the complaint to dispose of the action. Thus, we hold that the order is final and appealable.
 
 II. Subject Matter Jurisdiction
 
 11
 Whether subject matter jurisdiction exists is a question of law reviewable de novo. Peter Starr Prod. Co. v. Twin Continental Films, Inc., 783 F.2d 1440, 1442 (9th Cir.1986).
 
 
 12
 The only statutory provision under which the complaint asserted subject matter jurisdiction is 28 U.S.C. Sec. 1343 (granting subject matter jurisdiction over certain actions seeking protection of civil rights and elective franchise). The district court considered no other ground for subject matter jurisdiction. However, in determining the existence of subject matter jurisdiction, we are not limited to the jurisdictional statutes identified in the complaint. "[T]he court may sustain jurisdiction when an examination of the entire complaint reveals a proper basis for assuming jurisdiction other than one that has been improperly asserted...." 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1206 (1969); see Williams v. United States, 405 F.2d 951, 954 (9th Cir.1969) ("If facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded."). Therefore, we will consider jurisdiction under 28 U.S.C. Sec. 1351 (granting subject matter jurisdiction over civil actions against consuls, vice consuls, and members of a diplomatic mission) and 28 U.S.C. Sec. 1330 (granting subject matter jurisdiction over certain actions against foreign states) as well as jurisdiction under 28 U.S.C. Sec. 1343.
 
 A. Jurisdiction Under 28 U.S.C. Sec. 1351
 
 13
 28 U.S.C. Sec. 1351 provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against--(1) consuls or vice consuls of foreign states...." By virtue of this statute the federal courts may exercise jurisdiction over the two consuls general and one vice consul who are defendants in this action.[4]
 
 
 14
 Jurisdiction, however, may be limited by treaty. See Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 458, 31 L.Ed. 386 (1888) ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation"). To determine the power of the district court to exercise jurisdiction over the defendants in this case, we must examine the provisions of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. 6820, 596 U.N.T.S. 261. See Silva v. Superior Court, 52 Cal.App.3d 269, 275-78, 125 Cal.Rptr. 78, 82-84 (1975). The Vienna Convention is the most recent and most authoritative treaty binding on both Mexico and the United States that deals with consular relations and consular immunity.[5]
 
 
 15
 Article 43 of the Vienna Convention provides as follows: "Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." 21 U.S.T. at 104. Jurisdiction can be gained over consular officers and employees, therefore, only with respect to acts that do not constitute "consular functions." The term "consular functions" is defined in Article 5 of the Vienna Convention. Only two sections of Article 5 are relevant to the present case:
 
 
 16
 Consular functions consist in: (a) protecting in the receiving State the interests of the sending State and of its nationals, both individuals and bodies corporate, within the limits permitted by international law; ... (m) performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State.
 
 
 17
 21 U.S.T. at 82-85 (emphasis added).
 
 
 18
 There appears to be no authority interpreting the vague term "within the limits permitted by international law" in Article 5(a) of the Vienna Convention. It would appear, however, that the treaty does not include interference with the internal affairs of the receiving state within the scope of consular functions. See Vienna Convention, Article 55(1), 21 U.S.T. at 113 (consular officials protected by the treaty "have a duty not to interfere in the internal affairs of that [receiving] State").
 
 
 19
 Parallel provisions in the Vienna Convention on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227, T.I.A.S. 7502, 500 U.N.T.S. 95, support this reading of the treaty. Article 3(1)(b) of the Vienna Convention on Diplomatic Relations contains wording that is quite similar to the provisions in question. It states that "[t]he functions of a diplomatic mission consist inter alia in: ... (b) protecting in the receiving State the interests of the sending State and of its nationals, within the limits permitted by international law." 23 U.S.T. at 3231-32 (emphasis added). According to one authority, "[t]his means that [diplomatic representatives] are forbidden to interfere in the internal affairs of the state to which they are accredited." B. Jankovic, Public International Law 255 (1984).
 
 
 20
 Wrongful acts committed by an official or employee of a Mexican consulate within the United States to suppress criticism of Mexico within this country constitute an interference with the United States' internal affairs because these acts impair the citizenry's ability to promote self-government through robust discourse concerning issues of public import. Therefore, the acts of the two consuls general and the vice consul alleged in the complaint are not "within the limits permitted by international law" and thus are not consular functions as defined in Article 5(a).
 
 
 21
 Similarly, many of the consular officials' and employees' acts alleged in the complaint are not consular functions under Article 5(m). Assault with a deadly weapon and kidnapping, for instance, are not consistent with penal laws applicable in the United States. These acts are, therefore, "prohibited by the laws and regulations of the receiving State," and thus cannot constitute consular functions under Article 5(a).[6]
 
 
 22
 Because the acts alleged in the complaint are not consular functions under Article 5 of the Vienna Convention, these acts are not protected by consular immunity. See Heaney v. Government of Spain, 445 F.2d 501, 505 (2d Cir.1971).[7] Thus, the Vienna Convention does not preclude the exercise of jurisdiction under 28 U.S.C. Sec. 1351 over the two defendant consuls general and the vice consul.
 
 
 23
 B. Jurisdiction Under The Foreign Sovereign Immunities Act
 
 
 24
 28 U.S.C. Sec. 1330(a), referring to the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. Secs. 1602-11, provides as follows:
 
 
 25
 The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under section 1605-1607 of this title or under any applicable international agreement.
 
 
 26
 (Emphasis added.) The defendant Mexican Consulate falls within the definition of a foreign state because it is "a separate legal person" that is "an organ of a foreign state or political subdivision thereof" and that is "neither a citizen of a state of the United States ... nor created under the laws of a third country." 28 U.S.C. Sec. 1603(b). Cf. Gray v. Permanent Mission of the People's Republic of the Congo to the United Nations, 443 F.Supp. 816, 819 (S.D.N.Y.1978) (Congo Mission is a foreign state under 28 U.S.C. Sec. 1603), aff'd, 580 F.2d 1044 (2d Cir.1978). Thus, the Foreign Sovereign Immunities Act governs the exercise of jurisdiction over the Mexican Consulate.
 
 
 27
 The Act limits the extent of sovereign immunity enjoyed by foreign states. One of the enumerated exceptions to foreign sovereign immunity relates to actions
 
 
 28
 in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--
 
 
 29
 (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.
 
 
 30
 28 U.S.C. Sec. 1605(a)(5) (emphasis added). The present action falls within this exception because the plaintiff Gerritsen seeks damages for injury and loss of property in this country resulting from alleged tortious acts by the Mexican Consulate and by its officials and employees.
 
 
 31
 Moreover, the acts of the Mexican Consulate of which Gerritsen complains are not part of the exercise of "a discretionary function." We previously held that the Act maintains foreign sovereign immunity for torts committed in the exercise of a discretionary function in order to allow foreign states to be unfettered in their policy making. Accordingly, in determining what is a discretionary function,[t]his circuit employs a test which distinguishes between the "planning level" of governmental activity and those acts designed to carry out policy, the "operational level." Because decisions at the planning level establish governmental policy, they are not actionable. But where decisions occur at the operational level, the discretionary function exemption provides no protection from liability even though such decisions or acts may involve elements of discretion.
 
 
 32
 Olsen v. Government of Mexico, 729 F.2d 641, 647 (9th Cir.) (citations omitted), cert. denied, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). Many of the acts alleged in the complaint to have been committed on behalf of the Mexican Consulate, including assault with a deadly weapon and kidnapping, are not decisions to "establish governmental policy," or decisions at the "planning level," but rather, at best, are acts to "carry out policy," or acts at the "operational level." Therefore, the alleged acts attributed to the Mexican Consulate fall within the exception to foreign sovereign immunity described in 28 U.S.C. Sec. 1605(a)(5) (the tortious act or omission exception). Thus, under section 1605(a)(5), federal subject matter jurisdiction exists over the claims against the Mexican Consulate based on the wrongful acts alleged in the complaint.
 
 C. Jurisdiction Under 28 U.S.C. Sec. 1343
 
 33
 28 U.S.C. Sec. 1343 is the basis of district court jurisdiction alleged in the complaint. The district court found that jurisdiction could not lie under section 1343 because of the absence of state action. Clearly, as the district court recognized, "state action" or acts "under color of state law" refer to acts attributable to states of the United States. The Supreme Court impliedly so held when it concluded from the legislative history that for purposes of 42 U.S.C. Sec. 1983--a civil rights statute requiring state action--even the District of Columbia does not qualify as a state. District of Columbia v. Carter, 409 U.S. 418, 424-33, 93 S.Ct. 602, 606-10, 34 L.Ed.2d 613 (1973), superseded by 93 Stat. 1284 (1979) (42 U.S.C. Sec. 1983 was amended to include the District of Columbia, so that the section now reads "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia...."). Therefore, the acts performed by the defendants, all of whom are officials, instrumentalities, or employees of the Mexican government, could not constitute acts under color of state law for purposes of section 1343.
 
 
 34
 Gerritsen argues that state action or conduct under color of state law is not needed for jurisdiction invoked under 28 U.S.C. Sec. 1343(a)(1) and (2) for acts in violation of 42 U.S.C. Sec. 1985(3). This is true. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir.1980). Nevertheless, there is no jurisdiction under 28 U.S.C. Sec. 1343(a)(1) or (2) because Gerritsen's complaint does not state a claim under 42 U.S.C. Sec. 1985(3).
 
 
 35
 28 U.S.C. Sec. 1343 states in relevant part:
 
 
 36
 The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 
 
 37
 (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
 
 
 38
 (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent....
 
 
 39
 28 U.S.C. Sec. 1343(a). The only subsection of 42 U.S.C. Sec. 1985 that could possibly apply to the facts of the present case states in relevant part that a cause of action will lie
 
 
 40
 [i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.
 
 
 41
 42 U.S.C. Sec. 1985(3).
 
 
 42
 The Supreme Court has made it clear that 42 U.S.C. Sec. 1985(3) is not to be construed as a general federal tort law. "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (emphasis in original).
 
 
 43
 Gerritsen has not alleged in his complaint any class-based discrimination against him. As a result, he has not stated a claim under section 1985(3). Scott v. Rosenberg, 702 F.2d 1263, 1269-70 (9th Cir.1983), cert. denied, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). Therefore, there is no jurisdiction under 28 U.S.C. Sec. 1343(a)(1) or (2) for his claims.
 
 
 44
 Gerritsen argues on appeal, but did not allege in his complaint, that "he is one of those class of persons who are critical of the policies of the Mexican government," and that he "is a member of a class of persons who would distribute printed materials in public areas of the City of Los Angeles." Because this purported class formulation has been raised by Gerritsen in his briefs only and has not been alleged in his complaint, we need not decide now whether this class can give rise to a claim under section 1985(3). We do note, however, that we have previously held that to state a claim under section 1985(3) the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights. Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985). But see Keating v. Carey, 706 F.2d 377, 386-87 (2d Cir.1983) (Republicans are a protected class under section 1985(3)); Glasson v. City of Louisville, 518 F.2d 899, 912 (6th Cir.) (anti-government protestors are a protected class under Sec. 1985(3)), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).
 
 CONCLUSION
 
 45
 The district court had jurisdiction under 28 U.S.C. Sec. 1351 over the claims against the two consuls general and the vice consul. The Vienna Convention on Consular Relations does not grant these defendants immunity with respect to the claims alleged. The district court also had jurisdiction under the Federal Sovereign Immunity Act over the claims against the defendant Mexican Consulate. Therefore, we reverse the order dismissing the claims against the two consuls general, the vice consul, and the Mexican Consulate. We remand the action for appropriate further proceedings consistent with the views herein expressed, including the filing of amended pleadings.
 
 
 46
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Edward C. Reed, Jr., United States District Judge, District of Nevada, sitting by designation
 
 
 [1]
 28 U.S.C. Sec. 1343(a) reads in part:
 (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 * * *
 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.
 
 
 [2]
 We take the court's use of "state action" to mean under color of state law, which is a requirement for jurisdiction under 28 U.S.C. Sec. 1343 and an element of a claim for relief under 42 U.S.C. Sec. 1983
 
 
 [3]
 The Justice Department, through the U.S. Attorney for the Central District of California, recommended that we allow an official of the Mexican Consulate in Los Angeles to argue on behalf of the defendants pro hac vice. We allowed this argument to aid the court in the decisional process. We did not disturb the district court's ruling, which was not appealed, denying the Mexican government pro se status
 The U.S. Attorney's office argued that the Mexican consul had a right to appear at oral argument pursuant to the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. 6820, 596 U.N.T.S. 261 and the Consular Convention, August 12, 1942, United States-Mexico, 57 Stat. 800, T.S. No. 985. We find these arguments unpersuasive. The United States government and the Mexican government point to Article 5 of the Vienna Convention as giving the consul the right to appear. Article 5 states in relevant part that "[c]onsular functions consist in: ... (i) subject to the practices and procedures obtaining in the receiving State, representing or arranging appropriate representation for nationals of the sending State before the tribunals and other authorities of the receiving State." It is not consistent with the "practices and procedures obtaining in the receiving State" to have individuals who are neither parties nor attorneys admitted to practice before the federal courts to appear at oral argument. The United States government and the Mexican government also point to Article VI of the Consular Convention. Article VI states in relevant part that "[c]onsular officials of either High Contracting Party may, within their respective consular districts, address the authorities ... for the purpose of protecting the nationals of the State by which they were appointed in the enjoyment of rights accruing by treaty or otherwise." The provision allowing consuls to "address the authorities" does not provide foreign consuls a license to address authorities in the receiving state at any time, and does not provide a license to appear in court in contravention of the rules of court in the receiving state. We have previously held that these two treaties do not give consuls the right to appear in court on behalf of Mexican citizens. DuPree v. United States, 559 F.2d 1151, 1154-55 (9th Cir.1977).
 Although the consul had no right to appear at oral argument, we feel that it was a proper exercise of our discretion to grant the consul amicus status. In doing so, we availed ourselves of the benefit of the consul's thorough and erudite legal arguments, and promoted comity. We have this discretion under Fed.R.App.P. 2.
 
 
 [4]
 The complaint does not allege that all of the defendants are aliens. Such allegations, however, would confer diversity jurisdiction under 28 U.S.C. Sec. 1332. If indeed all of the defendants are aliens, Gerritsen must be permitted to amend his complaint accordingly. See 28 U.S.C. Sec. 1653; 3 J. Moore, Moore's Federal Practice paragraphs 15.09, 15.11 (1985)
 
 
 [5]
 Two other treaties in force between Mexico and the United States govern the immunity of consular officials and staff. The first is the Pan American Consular Convention, February 20, 1928, 47 Stat. 1976, T.S. No. 843, 155 L.N.T.S. 291. It states in Articles 15, 16, and 17 that "[c]onsular agents shall be subject to the jurisdiction of the courts in civil cases," that "[c]onsuls are not subject to local jurisdiction for acts done in their official character and within the scope of their authority," and that "[i]n respect to unofficial acts, consuls are subject, in civil as well as in criminal matters, to the jurisdiction of the state where they exercise their functions."
 The second is the Consular Convention, August 12, 1942, United States-Mexico, 57 Stat. 800, T.S. No. 985. It states in Article II that "[i]n civil, contentious-administrative and labor cases, consular officers shall be subject to the jurisdiction of the courts of the State which receives them," and that "[a] consular officer shall not be required to testify in ... civil cases, regarding acts performed by him in his official capacity."
 These provisions are virtually identical to the provisions of the Vienna Convention. Moreover, the Vienna Convention, which is by far the most detailed and explicit of the three treaties, was adopted with the intention of advancing codification of international law. 115 Cong. Rec. 30,953 (1969); see United States v. Chindawangse, 771 F.2d 840, 844 n. 10 (4th Cir.1985) (The Vienna Convention "codifies international law on consular relations."), cert. denied, --- U.S. ----, 106 S.Ct. 859, 88 L.Ed.2d 898 (1986). Therefore, our discussion will focus solely on the Vienna Convention.
 
 
 [6]
 Similarly, the Restatement (Second) of Foreign Relations Law of the United States describes this exclusion as follows: "The scope of official functions ... may be determined in part by the law of the receiving state. For example, the receiving state can forbid propaganda activities and travel in restricted areas." Id. Sec. 73 comment b (1965); see Sec. 81 comment b
 
 
 [7]
 Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 310 n. 27 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), notes that dicta in Heany relating to a wholly separate issue was superseded by 28 U.S.C. Sec. 1603(d)