Larry RISK, individually and as Guardian Ad Litem for Karima Risk and Jamil Risk, Plaintiff–Appellant,

v.

K.I. HALVORSEN; Olaf Solli, Defendants–Appellees.

Larry RISK, individually and as Guardian Ad Litem for Karima Risk and Jamil Risk, Plaintiff–Appellant,

v.

KINGDOM OF NORWAY, Defendant–Appellee.

Nos. 88–15803, 89–15701.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1990.

Decided June 5, 1991.

Martin Stender, McTernan, Stender, Walsh & Schwartzbach, and Dennis P. Riordan, Riordan & Rosenthal, San Francisco, Cal., for plaintiff-appellant.

John R. McDonough, Carlsmith, Ball, Wichman, Murray, Case, Mukai and Ichiki, Los Angeles, Cal., for defendants-appellees

Halvorsen, Olaf Solli and Kingdom of Norway.

Deborah Ruth Kant, U.S. Dept. of Justice, Washington, D.C., for amicus.

Before SCHROEDER, FERGUSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Larry Risk, individually and as guardian *ad litem* for his two minor children, sued the Kingdom of Norway ("Norway") and two Norwegian Consular officials, Knut Halvorsen and Olaf Solli ("Halvorsen" and "Solli"), for torts allegedly committed by those parties in connection with the removal of Risk's children from California in violation of a temporary custody order of the San Francisco Superior Court. The complaint alleges (a) interference with parent-child relations; (b) intentional infliction of emotional distress; and (c) the existence of a conspiracy to remove the children from California.

In separate orders, the district court dismissed these parties from the action, finding that they are immune from civil liability for the acts alleged in the complaint. 707 F.Supp. 1159. We assert jurisdiction under 28 U.S.C. § 1291 and affirm.

## FACTS

In 1977 Plaintiff Larry Risk married Elisabeth Antonsen Risk, a native and citizen of Norway. In 1983 the Risk family—Larry, Elisabeth and their two children—moved to Norway for a period. After an attempt by Larry to remove the children to the United States, Elisabeth received a temporary order from a Norwegian County Court providing ordinary visitation rights for the father. During the first visitation period Larry returned with the children to the United States.

In 1984 Elisabeth filed a petition in the Superior Court of San Francisco seeking custody of the two children. The parties were awarded joint custody and the superior court order prohibited the parents from removing the children from the five San Francisco Bay Area counties. In addition, the parties were required to surrender their children's passports and their own to Larry Risk's attorney, and were prohibited from applying for replacement passports without a court order. In July 1984, apparently with the assistance of various Norwegian government officials, Elisabeth Risk returned to Norway with her children.

Larry Risk filed this action in April, 1988, alleging that the Norwegian government and its consular officials conspired to violate and in fact violated the 1984 California custody order by suggesting to Elisabeth Risk that she return to Norway with the children; by providing travel documentation for Elisabeth and the children; by providing financial assistance to Elisabeth to make the trip; and, finally, by obstructing Larry Risk in his effort to locate and contact his children.

## DISCUSSION

### I. Standard of Review

The district court's separate decisions dismissing appellees from the action involved pure questions of law, and as such, are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### II. Dismissal of Norway

Appellant argued in the district court, and asserts here, that Norway is within the jurisdiction of the trial court under the Foreign Sovereign Immunity Act of 1976 ("FSIA").[1] The Act provides that "the district courts shall have original jurisdiction ... of any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the for-

---

1. Pub.L. No. 94-583 90 Stat. 2891-92, 2894-98 (1976), *codified at* 28 U.S.C. §§ 1330, 1332(a)(2), (4), 1391(f), 1441(d), 1602-1611.

eign state is not entitled to relief either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a).

### A.

The district court rejected jurisdiction over Norway under the FSIA because of an exception to the general jurisdiction provision, section 1605(a)(5), which excludes claims based on the exercise or performance, or failure to exercise or perform, a discretionary function.[2]

■ Whether the acts of the Norwegian officials are within the discretionary function exception to the FSIA is controlled by principles developed under the Federal Tort Claims Act ("FTCA"). *Joseph v. Nigeria*, 830 F.2d 1018, 1026 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). First, we "must determine whether the government employee had any discretion to act or if there was an element of choice as to appropriate conduct." *Liu v. Republic of China*, 892 F.2d 1419, 1431 (9th Cir.1989), *cert. dismissed*, — U.S. —, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990) (citing *Berkovitz v. United States*, 486 U.S. 531, 535, 108 S.Ct. 1954, 1957, 100 L.Ed.2d 531 (1988)). Second, we consider "whether the decisions were grounded in social, economic, and political policy," concentrating on "the nature of the conduct, rather than the status of the actor...." *MacArthur Area Citizens Ass'n v. Peru*, 809 F.2d 918, 922 (D.C.Cir.1987), *vacated on other grounds*, 823 F.2d 606 (1987) (quoting *United States v. Varig*, 467 U.S. 797, 813, 814, 104 S.Ct. 2755, 2764, 2765, 81 L.Ed.2d 660 (1984)).

In *MacArthur*, a neighborhood association sued the Republic of Peru for occupation and use of a building in violation of a zoning ordinance. The circuit court for the District of Columbia held that the discretionary function exception to the FSIA applied because the establishment of a chancery in a particular building, and modification of that building for security purposes, is a discretionary act of public policy, both political and economic in nature. *MacArthur*, 809 F.2d at 923.

In *Joseph v. Nigeria*, 830 F.2d 1018 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988), we declined to apply the discretionary function exception to acts of officials of the Nigerian government which lead to a tort suit. In that case, the government officials were accused of destruction of the property in which the Nigerian Consulate was located. We held that while acquisition and operation of the property was a discretionary function, purely destructive acts are not part of the policy decision to establish the consulate and thus fall outside the scope of the discretionary function exception. *Id.* at 1027.

■ The acts of the agents of the Norwegian government are closer to those of the officials in *MacArthur* and thus the discretionary function exception applies.

The Norwegian officials are accused of advising and assisting a Norwegian citizen and her children in leaving the United States. There can be no doubt the officials here were exercising discretion.

Moreover, each of the acts alleged by appellant are within those expressly within the function of consular officials according to the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77 ("VCCR"). Article 5, sections (d) and (e) of that document, to which the United States and Norway are signatories, defines consular functions in part as "issuing passports and travel documents to nationals of the

---

**2.** 28 U.S.C. 1605(a) provides that a foreign state is not
immune from the jurisdiction of courts of the United States ... in any case—

\* \* \* \* \* \*

(5) [I]n which money damages are sought against a foreign state for personal injury or death ... occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except that this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused....

sending state ..." and "helping and assisting nationals, both individuals and bodies corporate, of the sending state." Acts covered by the VCCR presumptively are "grounded in social, economic, and political policy" and thus the conduct of the Norwegian officials satisfies the second prong of the discretionary function analysis contained in *Liu.*

**B.**

Appellant argues that because the acts of the Norwegian officials may constitute a violation of California criminal law,[3] the acts should fall outside the scope of the discretionary function exception to the FSIA, and thus that the district court should have retained jurisdiction over Norway. Appellant relies principally on three cases in which federal courts have refused to apply FSIA immunity to criminal acts.

In *Liu v. Republic of China,* 892 F.2d 1419 (9th Cir.1989), the widow of a citizen of the Republic of China ("ROC"), whose murder allegedly was directed by the director of that country's Defense Intelligence Bureau, brought a wrongful death suit in federal court. This court refused to apply the discretionary function exception to the FSIA. We held that because the acts in this case violated ROC law, they were not discretionary and thus fell outside coverage of the discretionary function exception. *Id.* at 1431 ("[W]e hold that the discretionary function exception is inapplicable when an employee of a foreign government violates its own internal law."). This case has no application to the facts here. There is no assertion that the Norwegian officials violated any Norwegian law.

Appellant relies next on *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511 (9th Cir.1987). In that case this court also refused to apply the discretionary function exception to Mexican officials who allegedly kidnapped and assaulted the plaintiff in an attempt to prevent his criticism of the Mexican government. This court held that the discretionary function exception did not

apply because the acts alleged were not "decisions to 'establish governmental policy' ... but rather [were] acts to 'carry out policy' or acts at the 'operational level.'" *Id.* at 1518 (citing *Olsen v. Mexico,* 729 F.2d 641, 647 (9th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984)). Appellant's reliance on *Gerritsen* is misplaced. This circuit has abandoned the "planning/operations" distinction in conducting discretionary function analysis pursuant to the Supreme Court's decision in *United States v. Varig,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). *See e.g., Mitchell v. United States,* 787 F.2d 466, 468 (9th Cir.1986) (planning-operational distinction has been abandoned), *cert. denied,* 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987); *Chamberlin v. Isen,* 779 F.2d 522, 524 (9th Cir.) (same); *Begay v. United States,* 768 F.2d 1059, 1062–63 n. 2 (9th Cir.1985) (same).

Finally, appellant relies on *Letelier v. Republic of Chile,* 488 F.Supp. 665 (D.D.C. 1980). In that case, members of the families of a Chilean national and his assistant who were ordered assassinated by members of the Chilean government brought a tort action against Chile in federal court. The district court refused to apply the discretionary function exception to the FSIA, stating that "there is no discretion to commit, or to have one's officers or agents commit, an illegal act.... Whatever policy options may exist for a foreign country, it has no 'discretion' to perpetrate conduct designed to result in the assassination of an individual or individuals." *Id.* at 673.

While the *Letelier* court apparently considered "action that is clearly contrary to the precepts of humanity" outside the scope of the discretionary function exception, *id.,* the nature of the act in that case obviously influenced the court. In this case, the most that can be said is that Norwegian officials issued travel documents to a Norwegian citizen and her children, also citizens of Norway; that they provided funds for her travel; and that

---

**3.** Intentional violation of a custody order, or of the rights of a parent under such an order is a

felony in California. Cal.Penal Code § 278.5 (West 1988).

they protected her from contact by her former husband. Although these acts may constitute a crime under California law, it cannot be said that every conceivably illegal act is outside the scope of the discretionary function exception. *MacArthur*, 809 F.2d at 922 n. 4.

The district court correctly held that the discretionary function exception to the FSIA applies in this case and that it has no jurisdiction to hear the claims against Norway.

### III. Dismissal of Consular Officials

#### A.

■ The district court asserted jurisdiction over defendants Solli and Halvorsen, officials of the Norwegian Consulate, under 28 U.S.C. § 1351 which provides: "The district court shall have original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against (1) consuls or vice consuls of foreign states...." Jurisdiction under § 1351 may be limited by treaty. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir.1987).

The VCCR governs questions of consular immunity and as such limits jurisdiction under § 1351. *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1027 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988); *Gerritsen*, 819 F.2d at 1515.

Article 43(1) of the VCCR states that "Consular officials and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving state in respect of acts performed *in the exercise of consular functions.*" (emphasis added)

"Consular functions" are defined in Article 5 of the VCCR and include:

   (d) issuing passports and travel documents to nationals of the sending state, ...
   (e) helping and assisting nationals ... of the sending state;

The district court held that because the acts allegedly undertaken by defendants Solli and Halvorsen fall within those consular activities immunized by the VCCR, consular officials Halvorsen and Solli should be dismissed.

■ The complaint alleges: (1) that defendant Solli suggested to Johans Sandvin, an employee of the Norwegian Seaman's Mission, that Elisabeth Risk obtain identification papers and travel to Norway via Canada; (2) that defendant Halvorsen delivered to Elisabeth a Norwegian Seaman's Certificate of Identity which contained an attestation by Halvorsen that Elisabeth is a Norwegian subject; and (3) that upon being contacted by Larry Risk, Halvorsen denied knowing Elisabeth. These actions fall within those consular functions specifically immunized by the VCCR sections above. For that reason, the district court was correct to dismiss defendants Halvorsen and Solli from the action.

#### B.

Appellant argues that the VCCR does not immunize these consular officials for participation in the acts alleged because the Convention does not apply to criminal activity. He relies on *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511 (9th Cir.1987). In that case, a plaintiff sued Mexican consular officials for various torts and civil rights violations. Defendants argued that they were immune under the VCCR for the performance of "consular functions." *Id.* at 1516. This court held that no such immunity existed because the alleged acts of the consular officials, including assault and kidnapping, were not consular functions and thus fell outside the coverage of the VCCR. *Id.* at 1516–17.

Relying on *Gerritsen*, appellant argues that because Solli's and Halvorsen's conduct might be construed as criminal under California law, *see supra note* 3, it should not receive VCCR protection. As the district court noted, the consular activities in *Gerritsen* were covered by VCCR Article 5, sections (a) and (m), each of which provides immunity for consular actions "*provided they are within the limits permitted by international law;*" or "*are not prohibited by the laws and regulations of*

*the receiving state....*" 819 F.2d at 1516 (citing 21 U.S.T. at 82–85) (emphasis in the court of appeals' opinion).

The provisions of the VCCR relied on by Solli and Halvorsen (Article 5, sections (d) and (e)), on the other hand, contain no such limiting language. Because the conduct of the consular officials alleged in the complaint falls squarely within these sections of the VCCR, the district court correctly granted these defendants' motions to dismiss.

### C.

The district court found, as an alternative ground for dismissing the complaint against Halvorsen and Solli, that the consular officials were entitled to immunity under Article XVI of the Treaty of Friendship, Commerce and Consular Rights between the United States and Norway. We need not address that issue because we hold that the officials are immune under the VCCR.

### IV.  Conclusion

The district court properly determined that it lacked jurisdiction over Norway because in this case Norway is immune from civil suit under the discretionary function exception to the FSIA. Defendants Solli and Halvorsen correctly were dismissed from the action because they are immune from civil liability under Article 5, sections (d) and (e) of the VCCR. The separate orders of the district court dismissing Norway, Solli, and Halvorsen from this action are

AFFIRMED.