Jack **GERRITSEN**, Plaintiff–Appellant,

v.

**CONSULADO GENERAL DE MEXICO,** et al., Defendants–Appellees.

No. 92–55226.

United States Court of Appeals, Ninth Circuit.

Submitted March 3, 1993 *.

Decided March 30, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument.   Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Jack Gerritsen, in pro. per.

Carlos Pujalte Pineiro, Deputy Legal Advisor, Ministry of Foreign Affairs, United Mexican States.

Lourdes G. Baird, U.S. Atty., Leon W. Weidman, Asst. U.S. Atty. Chief, Civ. Div., Peter Hsiao, Asst. U.S. Atty., Los Angeles, CA, for federal defendants-appellees FBI and Carlos Berrios.

Before: D.W. NELSON, WIGGINS, LEAVY, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellant Jack Gerritsen ("Gerritsen") appears pro se, challenging the district court's grants of motions to dismiss and motions for summary judgment in favor of the defendants.[1] Specifically, he claims error in the district court's dismissal of the claims against the Federal Bureau of Investigation ("FBI") and FBI agent Carlos Berrios ("Berrios"); he also challenges the district court's summary judgment ruling in favor of the Consulate General of Mexico ("the Consulate" or the "Mexican Consulate"), and several officers or employees of the Consulate—Consul Javier Escobar y Cordova, Consul Agustin Garcia Lopez Santaolalla, Vice-consul Enrique Silva Guzman, and Assistant Salvador Uribe (collectively, "the consular defendants" or "the Mexican defendants"). We affirm the district court.

## I. Background

In 1985, Gerritsen brought suit against more than 20 defendants, including the defendants named above, the City of Los Angeles, several of its employees, the Los Angeles Police Department (LAPD), and others. The district court eventually dismissed all of the defendants; Gerritsen does not appeal the vast majority of those dismissals. Gerritsen claimed that the defendants violated his constitutional rights under the First, Ninth and Fourteenth amendments, the Racketeering Influenced and Corrupt Organizations Act (18 U.S.C.

§ 1962(c), (d) (1988)), 42 U.S.C. § 1983 (1988), and 42 U.S.C. § 1985 (1988).

Gerritsen's claims essentially arise out of his political protest activities near the Mexican Consulate in Los Angeles in 1982, 1983 and 1984. The Consulate is housed in a building leased from the City of Los Angeles and located in El Pueblo State Historic Park. Gerritsen frequently chose the Consulate, with its long lines of people seeking visas and other paperwork, as a site to express his political views, which are extremely critical of the Mexican government. He distributed Spanish and English language pamphlets, newspapers, and handbills near the Consulate; he gave speeches (sometimes using a loudspeaker or megaphone) there; and, sometimes attempted to confront the Consulate officials directly about various policies of the Mexican government.

Gerritsen's theory is that Mexican Consulate officials, the City of Los Angeles and its employees, park security guards, the LAPD, and the FBI conspired to deprive him of his First Amendment rights to distribute political literature, engage in political speech, and participate in other expressive activities. He alleges that the consular defendants inhibited his activities by asking him to desist in his protests and disruptions of consular business, threatening to take legal action against him, assaulting him, falsely imprisoning him, and kidnapping him.

In 1986, the district court dismissed with prejudice the complaint as to the Mexican defendants on the basis of lack of subject matter jurisdiction. Gerritsen appealed that decision to this court, which reversed

---

**1.** Gerritsen also raises on appeal the claim that the district court erred when it granted defendants' motion to allow the United Mexican States to appear pro se for the Consulate General. Gerritsen cites no authority to support his contention. Indeed, the district court acted well within its discretion in interpreting Local Rule 2.9.1 not to apply to foreign states and, thus, we do not upset its ruling. *See Guam Sasaki Corp. v. Diana's, Inc.,* 881 F.2d 713, 715 (9th Cir.1989) (citing *Lance, Inc. v. Dewco Services, Inc.,* 422 F.2d 778, 783–84 (9th Cir.1970)); *Miranda v.*

*Southern Pacific Transp. Co.,* 710 F.2d 516, 521 (9th Cir.1983) ("District courts have broad discretion in interpreting and applying their local rules."). Furthermore, we can see no way in which the district court's ruling negatively affected Gerritsen. *See In the Matter of Telemart Enterprises, Inc.,* 524 F.2d 761, 766 (9th Cir. 1975) ("Although noncompliance with local rules is not itself sufficient reason to reverse, noncompliance which prejudices the losing party may be.").

and remanded the case with instructions to allow the plaintiff to amend his complaint. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511 (9th Cir.1987) ("*Gerritsen I*"). Gerritsen subsequently amended his complaint in October 1987 and again in December 1987, now claiming subject matter jurisdiction over the Consulate and the Mexican defendants under 28 U.S.C. §§ 1330(a) and 1351 (1988).

The district court again ruled in favor of these defendants, finding that Gerritsen did not perfect service on the Consulate, Garcia or Uribe and that the court did not have subject matter jurisdiction over Escobar or Silva. *Gerritsen v. Cordova, et al.*, 721 F.Supp. 253 (C.D.Cal., 1988). Gerritsen immediately appealed to this court, but this court refused to hear the appeal as it was not a final, appealable order.

In December 1987, the district court granted the FBI's motion to dismiss on the grounds that it lacked jurisdiction over suits brought against a federal agency *eo nomine* absent an explicit authorization of Congress. Nearly two years later, the district court granted FBI Agent Berrios' motion for summary judgment, finding that the statute of limitations had expired.

In late 1991 and early 1992, the district court dismissed the remaining defendants—two private security companies, the City of Los Angeles, and several City employees. Gerritsen does not appeal the decisions as to these defendants. These dismissals transformed the earlier dismissals and grants of summary judgment into final orders, thus clearing the way for Gerritsen's timely appeal of the rulings in favor of the FBI, FBI Agent Berrios, the Mexican Consulate, and the Consulate officials.[2]

## II. *Dismissal of the FBI*

■ Whether or not the FBI was immune from suit is a question of law which we review de novo. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547,

552 (9th Cir.1984). The district court dismissed the FBI as a defendant in this case because it lacked jurisdiction over suits against a federal agency absent express statutory authorization.

■ The law of this circuit compels our affirmance of the court's dismissal. *See City of Whittier v. United States Department of Justice*, 598 F.2d 561, 562 (9th Cir.1979); *accord, Abbott Bldg. Corp. Inc. v. Federal Savings and Loan Ins. Corp.*, 739 F.Supp. 532 (D.Nev.1990), *aff'd*, 951 F.2d 191 (9th Cir.1991). Gerritsen's assertion that none of these cases concern the FBI is correct but irrelevant; what matters is that the FBI is a federal agency and that Congress has not revoked its immunity.[3]

## III. *Dismissal of the FBI Agent*

■ The district court dismissed FBI Agent Berrios in 1989, finding that the statute of limitations for the alleged injury had expired. We review an application of the statute of limitations de novo. *Felton v. Unisource Corp.*, 940 F.2d 503, 508 (9th Cir.1991). When such application turns on what a reasonable person should know, a mixed question of law and fact is presented which we review for clear error. *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir.1990).

■ In California, a so-called *Bivens* action against a federal agent is subject to a four year statute of limitations. *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir.), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). Gerritsen alleges that Berrios violated his constitutional rights by lying about the legality of his protest activities at the Consulate. This allegation is based on a conversation between Gerritsen and Berrios in August 1983. Gerritsen filed his original complaint

---

**2.** This case initially was assigned to U.S. District Judge Pamela A. Rymer, but upon her appointment to this court in 1989, the case was transferred to U.S. District Judge Terry J. Hatter. Judge Rymer made the rulings which are the subject of this appeal; thus, references to "the district court" in the body of this Opinion are to her.

**3.** Gerritsen cites *CISPES v. F.B.I.*, 770 F.2d 468 (5th Cir.1985), to support his claim. In that case, the Fifth Circuit did not invoke the FBI's immunity, choosing to dismiss the claim on other grounds. The law of this circuit, however, demands a different outcome.

**344**

in 1985, but he did not add Berrios as a defendant until December, 1987.

■■■ "[T]he touchstone for determining the commencement of the limitations period is notice: 'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Hoesterey v. City of Cathedral City,* 945 F.2d 317, 319 (9th Cir.1991) (quoting *Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 1941, 118 L.Ed.2d 546 (1992)). In this case, then, the limitations began tolling in August 1983, yet Gerritsen did not name Berrios as a defendant until December 1987—more than four years after the alleged violation. Thus, the district court properly found that the statute of limitations had expired.

The district court also made findings of fact regarding the relating back and tolling exceptions, and it concluded that these provisions did not apply in this case. The district court found that Berrios never received actual notice of the original 1985 complaint from Gerritsen; that Berrios had no way of knowing he would be sued at a later date; and that Berrios' himself had nothing to do with causing Gerritsen's delay in adding him to the complaint. As these factual findings are not clearly erroneous, we will not reverse them.

## IV. *Grant of Summary Judgment for the Mexican Defendants*

The district court granted the motion for summary judgment filed by the Mexican Consulate and the consulate defendants on two grounds. First, it found that it lacked personal jurisdiction due to improper service over the Consulate itself and two individual defendants—Garcia and Uribe. Regarding the two remaining individual defendants, Escobar and Silva, the district court found that it lacked subject matter jurisdiction over them because they were immune under the Vienna Convention on

Consular Relations ("Vienna Convention"). 21 U.S.T. 77. We affirm the district court in both respects.

■■■ A district court's ruling on whether or not there is personal jurisdiction is reviewed de novo. *Bourassa v. Desrochers,* 938 F.2d 1056, 1057 (9th Cir.1991). Whether or not the district court has subject matter jurisdiction is a question of law which we review de novo. *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511 (9th Cir.1987); *see also Joseph v. Office of the Consulate General of Nigeria,* 830 F.2d 1018 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). We accept the factual findings on which the district court bases its jurisdictional conclusions as correct unless they are clearly erroneous. *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552, 554 (9th Cir.1992).

### A. *Lack of Personal Jurisdiction*

#### 1. *Improper Service as to Garcia and Uribe*

■■■ Gerritsen sued the four individual Mexican defendants in both their individual and official capacities.[4] Under Federal Rule of Civil Procedure 4(d), in order to serve the defendants properly in their individual capacity, Gerritsen was required to serve them either personally or by leaving a copy of the summons and complaint at their usual place of abode. Instead, he attempted service on Garcia and Uribe by leaving the paperwork with a co-worker at the Mexican Consulate.

When defendants are sued in their official capacity, service may be made personally or by leaving the summons and complaint with an authorized agent at the defendant's place of employment. *Daly– Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987). Since service was not made either personally or to an authorized agent to Garcia or Uribe, the suits against them in their official capacity must also be dis-

---

**4.** Gerritsen initially sued the four individual consulate officials in their individual capacities only; but in his Second Amended Complaint of December 1987, he sued them in both their individual and official capacities. The district court dismissed the complaints as to the defendants' individual capacities, but failed to undertake the official capacity analysis. We find that under both analyses, defendants Garcia and Uribe were not served properly.

missed. Gerritsen does not refute the district court's factual conclusions regarding the manner of service.

### 2. *Improper Service As to the Consulate*

■ Gerritsen attempted to serve the Mexican Consulate by having the district court clerk send an untranslated copy of the complaint to the President of Mexico by registered mail. Service of the Consulate is governed by the Foreign Sovereigns Immunity Act (FSIA). 28 U.S.C. § 1330 (1988). Since the consulate is a separate legal person, it is a "foreign state" within the meaning of the FSIA. *Joseph,* 830 F.2d at 1021 (citing *Gerritsen I,* 819 F.2d at 1517).

■ Section 1608(a) of the FSIA provides for four alternative methods of service, only one of which could apply in this case:

> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, *together with a translation of each into the official language of the foreign state,* by any form of mail requiring signed receipt, to be addressed and dispatched by the clerk of the court to *the head of the ministry of foreign affairs* of the foreign state concerned.

28 U.S.C. § 1608(b) (emphasis added). Even assuming that the president of Mexico is "the head of the ministry of foreign affairs," Gerritsen did not perfect service because he sent only an English language version of the complaint.

### B. *Lack of Subject Matter Jurisdiction as to Others*

Gerritsen properly served only two of the consulate defendants, Consul Escobar and Vice-consul Silva.[5] Gerritsen claimed jurisdiction over Escobar and Silva under 28 U.S.C. § 1351. The district court went on, however, to dismiss these defendants for lack of subject matter jurisdiction, concluding that they were immune under the Vienna Convention.[6] 21 U.S.T. 77.

Gerritsen alleges that Escobar and Silva took various actions and/or made various statements to him in an effort to inhibit or curtail completely his anti-Mexican government protest activity near the Consulate. Gerritsen said that, on various occasions in 1983 and 1984, Escobar verbally threatened him, placed him under citizen's arrest in the Consulate (until LAPD officers arrived to take Gerritsen into custody for disrupting the peace), and talked to the U.S. Attorney to explore legal options for restraining Gerritsen. Gerritsen alleged that Silva "interrogated and intimidated" him on one occasion in 1983. Despite orders from the district court to specify and elaborate upon these allegations and interrogatories from the defendants, Gerritsen never provided more detailed information. On this limited evidentiary basis, the district court concluded that Escobar and Silva were immune from suit under the Vienna Convention.

■ Immunity of consular officials is governed by Article 43 of the Vienna Convention: "Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect to acts performed in the exercise of the consular functions." 21 U.S.T. at 104. The term "consular functions" is defined in the several clauses of Article 5. Only one of these clauses is relevant here, 5(m), the catch-all provision which states:

> ... any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force be-

---

**5.** Defendant Uribe, who was dismissed as not properly served, committed the alleged acts of assault, false imprisonment, and kidnapping of Gerritsen. The remaining defendants, Escobar and Silva, allegedly committed acts of verbal harassment and threats against Gerritsen.

**6.** The Vienna Convention is the authoritative treaty between the United States and Mexico governing consular relations and immunity. *Gerritsen,* 819 F.2d at 1515.

tween the sending State and the receiving State.

21 U.S.T. at 82–85.

The district court found that the consular officials acted in order "to maintain the peace and dignity of the consular offices ... [to protect] consular premises" and that these were legitimate consular functions within the meaning of Article 43.[7] The functions of protecting the dignity and premises of the Consulate are reasonable functions of a foreign mission in this country, and they are not illegal in and of themselves. Thus, we agree that this was a "consular function" within the meaning of the Vienna Convention.

This does not end our inquiry, however, as the Vienna Convention also requires that the acts for which the consular officials seek immunity must be "performed in the exercise of the consular functions" in question.[8] *See Joseph*, 830 F.2d at 1027–28. In *Joseph*, this court found that the consular official's damage to and theft of property from a rented home had no connection whatsoever to his consular functions, and, consequently, that he was not immune under the Vienna Convention. *Ibid.*

Thus, the alleged acts taken by Escobar and Silva against Gerritsen must be shown to be in the furtherance of the functions of protecting the dignity and premises of the Mexican Consulate. The district court found that the defendants' alleged actions were taken "in response to plaintiff's [anti-Mexican government] leaflets and political speeches ... in the proximity of the consulate ..." and that they furthered the claimed consular functions.

 We also conclude, based upon the record before us (which Gerritsen had the opportunity to develop between 1985 and 1988), that the defendants' actions constitute reasonable efforts to effectuate the consular function of maintaining the dignity and safety of the Consulate. Consul Escobar's reliance on government officials in the host country (including the local police and the U.S. Attorney) was reasonable in the context of Gerritsen's repeated disruptions and refusals to leave the Consulate. Likewise, Escobar's and Silva's verbal warnings and threats, without accompanying physical contact, were attempts to persuade Gerritsen to leave the area or to desist from disrupting consular business.

### V. *Conclusion*

We affirm the district court in all respects. The district court properly dismissed the FBI because it lacked jurisdiction absent express statutory authorization. The court also properly concluded that the statute of limitations barred Gerritsen's claim against FBI Agent Berrios. The district court did not err in finding that the plaintiff did not perfect service on defendants Garcia, Uribe, and the Consulate General itself. Finally, the court did not err in concluding that it lacked subject matter jurisdiction over defendants Escobar and Silva because they were immune from suit under the Vienna Convention.

AFFIRMED.

---

7. In *Gerritsen I*, this court found that the acts of violence alleged by Gerritsen to have been committed by consular officials were not "consular functions" because they were per se illegal in this country. *Gerritsen*, 819 F.2d at 1517. Since that time, the record in this case has narrowed in two relevant respects: (1) the district court has made factual findings as to the nature of the "consular functions" involved here, based on evidence presented by the defendants; and, (2) it has become clear that Gerritsen did not allege that defendants Escobar and Silva (the defendants seeking immunity under the Vienna Convention) committed the alleged acts of assault, torture and kidnapping.

8. The *Gerritsen I* court never reached this second question, since it found as a preliminary matter that the case did not involve legitimate "consular functions" under the Vienna Convention.